# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| K&F RESTAURANT HOLDINGS, LTD. d/b/a IZZO'S ILLEGAL BURRITO; K&F RESTAURANT OPERATIONS, LLC; G&O PIZZA HOLDINGS, LTD d/b/a LIT PIZZA; G&O RESTAURANT OPPERATIONS, LLC; OSVALDO FERNANDEZ; and A. GARY KOVACS<br><br>VERSUS<br><br>DONALD J. ROUSE, JR.; DONALD J. ROUSE, SR.; THOMAS B. ROUSE; ALLISON ROUSE ROYSTER; and ROUSE'S ENTERPRISES, L.L.C. | CIVIL ACTION<br><br>16-293-SDD-EWD |

## RULING

This matter is before the Court on the *Partial Motion to Dismiss Pursuant to Rule 12(b)(6)*[1] filed by Defendants, Donald J. Rouse, Jr., Donald J. Rouse, Sr., Thomas B. Rouse, Allison Rouse Royster, and Rouse's Enterprises, L.L.C. ("Defendants"). Plaintiffs, K&F Restaurant Holdings, Ltd., d/b/a Izzo's Illegal Burrito, K&F Restaurant Operations, L.L.C., G&O Pizza Holdings, Ltd., d/b/a Lit Pizza, G&O Restaurant Operations, L.L.C., Osvaldo Fernandez, and A. Gary Kovacs ("Plaintiffs"), filed an *Opposition*[2] to which Defendants filed a *Reply*.[3] For the reasons that follow, the *Motion*[4] shall be granted in part and denied in part.

---

[1] Rec. Doc. 5.
[2] Rec. Doc. 10.
[3] Rec. Doc. 23.
[4] Rec. Doc. 5.
37163

**I.     FACTUAL BACKGROUND**[5]

Plaintiffs claim that Defendants engaged in unfair trade practices, tortious interference with a contract, defamation, conversion, trademark infringement, and conspiracy under Louisiana law.[6]  Defendants allegedly included in their lease agreements with various developers a provision which prevented Izzo's, or any business owned by Izzo's holding companies or owners, Osvaldo Fernandez ("Fernandez") and A. Gary Kovacs ("Kovacs"), from being located in the same development as Rouse's.[7]  The three lease agreements at issue were executed on June 5, 2013, June 18, 2013, and February 9, 2015 in the Parishes of East Baton Rouge, Livingston, and Tangipahoa, respectively.[8]

Plaintiffs' colorful assertions against the Defendants include the following allegations.  Plaintiffs "suspect that Defendants lied to the developers, probably making defamatory statements in order to induce them into executing the [prohibition on leasing property to Izzo's or any company owned by Plaintiffs]."[9]  "The Rouse family, each and every one, hates Izzo's for catching Rouse's with its hand in the cookie jar."[10]  The heated relationship between the parties began when Izzo's became aware that an employee of Defendants had in his possession an Izzo's recipe book at a Rouse's location.[11]  Defendants' alleged hatred for Plaintiffs allegedly inspired them to "destroy Izzo's" which, Plaintiffs posit, lead to "a conscious meeting wherein the Rouse family members spoke

---

[5] The Court bases the factual background on Rec. Docs. 1-1, 5, 10, 23.
[6] Rec. Doc. 5.
[7] Rec. Doc. 10.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] The Court notes that Plaintiffs took no legal action relating to the burrito recipe book incident.  *See* Rec. Doc. 5.
37163

openly about how to retaliate against Izzo's and doing the most damage."[12] Defendants were allegedly so enflamed by their hatred for Plaintiffs that "Plaintiffs suspect that Defendants lied to the developers, probably making defamatory statements, in order to induce them into executing the sweeping discriminatory provisions."[13]

Lastly, Plaintiffs argue that Defendants have infringed on Izzo's "Roll Your Own" trademark and began to use a similar slogan, "Build your own." According to Plaintiffs, this was done "to cause confusion in the market and to take away the good will that Izzo's had created with its good name."[14]

This matter was originally filed in the Nineteenth Judicial District Court for the State of Louisiana, Parish of East Baton Rouge on April 15, 2016 and was removed to this Court on April 29, 2016.[15] Pursuant to Rule 12(b)(6), Defendants now seek to dismiss the following claims: Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law ("LUTPA") – Count I; Violation of Louisiana Civil Code Article 2315 – Count II; Tortious Interference with a Contract – Count II A; Product Defamation – Count II B; Civil Conversion – Count II C, Trademark Infringement under Louisiana Law – Count III; and Conspiracy – Count IV.

---

[12] Rec. Doc. 10.
[13] *Id.*
[14] *Id.*
[15] This case was removed pursuant to 28 U.S.C. §§ 1441, 1446, and 1331. "Defendants also reserve their right to assert 28 U.S.C. § 1332(a) as a basis of removal if discovery reveals it to be appropriate." Rec. Doc. 1.
37163

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[16] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[17] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[18] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[19] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[20] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[21] In order to satisfy the plausibility standard, the plaintiff must show "more than

---

[16] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[17] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[18] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[19] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[21] *Twombly*, 550 U.S. at 570.
37163

a sheer possibility that the defendant has acted unlawfully."[22]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[23]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[24]

### B. LUTPA Claim

Plaintiffs allege that Defendants have violated LUTPA because Defendants' "acts and practices…in concert with various developers and potentially other parties were all conducted with the sole intent to cause economic damage" to Plaintiffs.[25]  In their *Motion to Dismiss*, Defendants assert that Plaintiffs' LUTPA claims are time barred as the peremption period to file a LUTPA claim has lapsed.[26]  As this case presents a Louisiana state law claim, the Court relies on Louisiana jurisprudence to analyze the claim presented.[27]

Plaintiffs and Defendants agree that LUTPA is subject to a one year peremptive period calculated from the date on which the alleged unfair trade practice occurred.[28]  The alleged acts that violated LUTPA were the restrictive covenants contained in the lease agreements dated June 18, 2013, June 5, 2013, and February 9, 2015.[29]  The case was filed on April 15, 2016, well beyond the one year peremptive period act.  Plaintiffs argue

---

[22] *Iqbal*, 556 U.S. at 678.
[23] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[24] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[25] Rec. Doc. 1-1.
[26] Rec. Doc. 5.
[27] *See Shakeri v. ADT Sec. Services, Inc.*, 816 F.3d 283, 290-91 (5th Cir. 2016); "In resolving issues of state law we are bound to apply the law as interpreted by the state's highest court."(internal citations omitted).
[28] *See* Rec Docs. 5 and 10.
[29] Rec. Doc. 5.
37163

the strict peremption should not apply because "it is well settled that the continuing violation doctrine applies to the LUTPA peremptive period, and one year has not passed since the last alleged act."[30]

While the Fifth Circuit has held that the continuing violation can be applied to a LUTPA claim,[31] the party arguing for the continuing violation doctrine must prove why it merits application.[32] Plaintiffs' assertion that the "Court need only look at the various general allegations set forth in paragraph 33 of Plaintiffs Petition to see that the alleged violations of LUTPA are continuing…" does not automatically give rise to the application of the continuing violation doctrine and is a "legal conclusion couched as a factual allegation" that the United States Supreme Court held cannot survive a 12(b)(6) motion to dismiss.[33]

Furthermore, even if Plaintiffs had plead their LUTPA continuing violation doctrine in a legally sufficient manner, the continuing violation doctrine is still inapplicable to the present case. In applying the Fifth Circuit's holding in *Tubos de Acero de Mexico, S.A. v. American International Investment Corp., Inc.*, Louisiana Federal District Courts have held that "a continuing violation is occasioned by unlawful acts, not the continuation of the ill effects of the original wrongful act."[34] The "continued existence of these discriminatory provisions,"[35] which Plaintiffs argue merits the application of the continuing violation

---

[30] Rec. Doc. 10.
[31] *Tubos de Acero de Mexcio, S.A. v. American Intern. Inv. Corp., Inc.*, 292 F.3d 471, 482-83 (5th Cir. 2002).
[32] *See Terrebonne Parish Sch. Bd. V. Mobil Oil Corp.,* 310 F.3d 870, 886 (5th Cir. 2002).
[33] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[34] *Naquin v. Berryland Campers, LLC.*, No. 14-2133, 2014 WL 6981944, at *3 (E.D. La. Dec. 9, 2014); quoting *Crump v. Sabine River Auth.*, 98-2326 (La. 9/17/99); 737 So.2d 720, 728; *Tubos de Acero de Mexcio, S.A.* 292 F.3d at 483.
[35] Rec. Doc. 10.
37163

doctrine, is precisely the type of pseudo-LUTPA continuing violation that Louisiana Federal District Courts have held does not merit application of the continuing violation doctrine.[36] The alleged wrongful acts occurred on June 18, 2013, June 5, 2013, and February 9, 2015.[37] The fact that Plaintiffs continue to be impacted by the "ill effects"[38] of the juridical acts does not merit application of the continued violation doctrine.

In support of their continuing violation theory, Plaintiffs point to the "continued existence of these discriminatory provisions."[39] However, for the reasons stated above, this proposition has not been recognized as an act meriting the application of the continuing violation doctrine to a LUTPA claim under applicable jurisprudence.[40] Plaintiffs' inartful attempt to recast which act violates LUTPA is contrary to the jurisprudence of Louisiana federal district courts that have examined when the continuing violation doctrine saves a LUTPA claim on a 12(b)(6) motion.[41] Accordingly, Defendants' *Motion to Dismiss* Plaintiffs' LUTPA claim – Count I is GRANTED.[42]

### C. Tortious Interference With a Contract Claim

Plaintiffs' mislabeled tortious interference with a contract claim, per Plaintiffs' own admission, is actually a claim for tortious interference with a business relationship. Plaintiffs claim that Defendants' actions "have tortuously [*sic*] interfered and continue to

---

[36] *See supra* note 34.
[37] Rec. Doc. 1-1.
[38] *Naquin*, 2014 WL 6981944, at *3.
[39] Rec. Doc. 10.
[40] Alternatively, Plaintiffs argue that the "act" to calculate the LUTPA peremptive period is the denial of lease that occurred on March 15, 2016. However, Plaintiffs acknowledge that the denial of the lease on March 15, 2016 was "by virtue of the June 18, 2013 lease agreement." Rec. Doc. 10. By Plaintiffs' own admission, the March 15, 2016 incident is an ill effect originating "by virtue" of the June 18, 2013 lease agreement. Accordingly, the Court finds that Plaintiffs' bid to redefine the act does not escape the peremptive period, as the March 15, 2016 is but an ill effect of the June 18, 2013 lease agreement.
[41] *See supra* note 38.
[42] As Plaintiffs' LUPTA claim has prescribed, the Court need not reach the merits of Plaintiffs LUTPA complaint.
37163

tortuously interfere with lawful business relationships between Izzo's and its partners and other developers."[43] While "Louisiana courts have recognized a cause of action for tortious interference with business,"[44] Louisiana jurisprudence has viewed [tortious interference with a business relationship] with disfavor."[45] Notably, Plaintiffs must plead that Defendants had actual malice, "a showing of spite or ill will,"[46] which resulted in the Defendants "improperly influenc[ing] others not to do business" with the Plaintiffs.[47]

Once again, Plaintiffs support their pleading with the conclusory statement that Defendants "have harbored significant and substantial malice towards Izzo's as a result of the incident from February of 2012."[48] The statement that Defendants had malice is a "legal conclusion couched as a factual allegation"[49] which this Court finds cannot survive Defendants' *Motion to Dismiss*.[50] Puzzlingly, Plaintiffs have failed to specifically identify which of Defendants' acts and practices interfered with Plaintiffs' business relationships. Plaintiffs' speculation as to the Defendants' state of mind is not factual pleading. Consequently, the Court is left "strain[ing] to find inferences favorable to the plaintiff."[51]

---

[43] Rec. Doc. 1-1.
[44] *Junior Money Bags, Ltd. V. Segal*, 970 F.2d 1, 10 (5th Cir. 1992); citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 601 (5th Cir. 1981).
[45] *JCD Mktg. Co v. Bass Hotels & Resorts, Inc.*, 2001-1096, (La.App. 4 Cir. 3/6/2002); 812 So.2d 834, 841.
[46] *Id.*
[47] *Junior Money Bags*, 970 F.2d at 10.
[48] Rec. Doc. 1-1.
[49] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[50] Because the Court finds that Plaintiffs have failed to sufficiently plead this claim in comportment with jurisprudence from the United States Supreme Court, the Court need not examine Defendants' arguments regarding prescription.
[51] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
37163

Accordingly, Defendants' *Motion to Dismiss*[52] Plaintiffs' Tortious Interference with a Contract Claim – Count II A is GRANTED.

### D. Plaintiffs' Product Defamation Claim

Plaintiffs' *Complaint* alleges that the "various aforementioned acts and practices by [Defendants] constituted and continue to constitute defamation of Izzo's and its partners' product and name."[53] Again, Plaintiffs have failed to label their claim properly; their *Opposition*[54] states that they allege both "defamation and disparagement," but their *Complaint* only contains a claim for "product defamation."[55] Nevertheless, the Court will examine whether Plaintiffs have plead a valid claim for product defamation and product disparagement.

To successfully prove a defamation claim in Louisiana, a plaintiff must prove all of the following: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher and (4) resulting injury."[56] To the first requirement, a false and defamatory statement concerning another, Plaintiffs concede that they have no specific examples of a false and defamatory statement concerning another, but "common sense permits the conclusion that the facts are there."[57] Plaintiffs merely "suspect that Defendants lied to the developers, probably making defamatory statements, in order to induce them into

---

[52] The Court has considered the arguments made by Defendants regarding the standard for an interference with a contract claim under Louisiana law and the prescriptive period for a breach of contract claim. Given that Plaintiffs acknowledge in their *Opposition* that their interference with a contract claim is actually an interference with a business relationship claim, which Defendants failed to acknowledge in their *Reply*, the Court finds Defendants' arguments in their memorandum in support of their *Motion* moot.
[53] Rec Doc. 1-1.
[54] Rec Doc. 10.
[55] Rec. Doc. 1-1.
[56] *Fitzgerald v. Tucker*, 98-2313 (La. 6/29/99); 737 So.2d 706, 715.
[57] Rec. Doc. 10.
37163

executing the sweeping discriminatory provisions."[58]  Furthermore, "Plaintiffs simply cannot imagine that the developers would be willing cohorts of Defendants."[59]  Plaintiffs' supposition and suspicion that Defendants made a false and defamatory statement absent any concrete specific factual allegation based on actual knowledge that any statement was made by Defendants is a "naked assertion devoid of further factual enhancement."[60]  Accordingly, the Court finds that Plaintiffs have not met the most basic pleading requirements to state a claim of product defamation, and Defendants' *Motion to Dismiss* Plaintiffs' product defamation claim is GRANTED.

To succeed on a product disparagement claim, a plaintiff must plead: "publication, with malice, of false allegations concerning the property or product, and the causing of pecuniary harm."[61]  For the same reasons discussed above, Plaintiffs offer only conjecture and speculation that Defendants made, or published, any statement regarding Plaintiffs.  Accordingly, without any "factual enhancement" for their "naked assertion" that Defendants disparaged their product,[62] Defendants' *Motion to Dismiss* Plaintiffs' product disparagement claim is GRANTED.

### E. Conversion Claim

Plaintiffs' *Complaint* also contains a claim for civil conversion.[63]  Defendants argue that Plaintiffs have failed to state a claim for conversion.[64]  Plaintiffs offer no response in opposition to Defendants' *Motion to Dismiss* the conversion claim.  Under local rule 7(f)

---

[58] *Id.*
[59] *Id.*
[60] *Iqbal*, 556 U.S. at 678.
[61] *Taquino v. Teledyne Monarch Rubber*, 893 F.1488, 1501 (5th Cir. 1990).
[62] *Iqbal*, 556 U.S. at 678.
[63] Rec. Doc. 1-1.
[64] Rec. Doc. 5.
37163

of the Middle District of Louisiana, all memorandum in opposition to a motion shall contain a concise statement of reasons in opposition to the motion.  Therefore, Defendants' *Motion to Dismiss* the conversion claim is deemed to be unopposed and, further, after reviewing the record, the Court finds that the Motion has merit.[65]

Accordingly, the Defendants' *Motion to Dismiss* Plaintiffs' conversion claim - Count II C is GRANTED.

### F.  Louisiana Trademark Infringement Claim

Plaintiffs' *Complaint* states that Defendants violated the Louisiana Trademark statute, "because [Defendants'] use of Izzo's proprietary information is intended to and is likely to cause confusion or mistake and is intended to and has deceived consumers as to the source of origin of such goods or services."[66]  Defendants argue that Plaintiffs "make only conclusory allegations regarding Defendants' use of trademark" and that "Plaintiffs have not plea[d] facts sufficient to show that they have a substantive right in the mark permitting them to assert a claim against Defendants for their use of the same."[67] Plaintiffs counter that "it is undisputed that Izzo's Illegal Burrito has long enjoyed the Tradename 'Roll Your Own' as a part of the Burrito restaurant concept."[68]

The Louisiana Supreme Court in *Gulf Coast Bank v. Gulf Coast Bank & Trust Co.* held: "the primary issues in a trade name infringement case are: (1) whether the party seeking the injunction has a protectable proprietary right in the name it seeks to exclude

---

[65] *See, e.g.*, *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 806 (5th Cir. 2012) ["The] failure to oppose a 12(b)(6) motion is not in itself grounds for granting the motion. Rather, a court assesses the legal sufficiency of the complaint."); *Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (per curiam); *John v. La. (Bd. of Trustees)*, 757 F.2d 698, 709 (5th Cir. 1985).
[66] Rec. Doc. 1-1.
[67] Rec. Doc. 5.
[68] Rec. Doc. 10.
37163

others from using, and (2) if so, whether there has been an infringement of that right."[69] The Court must first examine whether Plaintiffs had a "protectable right" in the trade name "Roll Your Own" "such that it may exclude others from using it."[70] Plaintiffs allege that it has "long enjoyed the tradename 'Roll Your Own'" thus establishing a "protectable property right in its name such that it may exclude others from using it."[71] "Use alone, however, does not create a protectable proprietary interest; the trademark or name must be distinctive, either by being inherently distinctive or by having acquired distinctiveness through secondary meaning."[72] The Court declines to make a determination on the inherent or acquired distinctiveness of the trade name "Roll Your Own" as it is inappropriate for the Court to make factual determinations on a motion to dismiss.

Plaintiffs' *Complaint* specifically states that the use of the term "Build Your Own" was used to "cause confusion or mistake and is intended to and has deceived consumers as to the course of origin of such goods or services."[73] This specifically meets the second requirement outlined in *Gulf Coast Bank* – "an infringement on [Izzo's protectable proprietary right]."[74]

Accordingly, Defendants' *Motion to Dismiss* Plaintiffs' Louisiana Trademark claim – Count III is DENIED.

### G. Civil Conspiracy Claim

Plaintiffs' *Complaint* alleges "Defendants are liable *in solido* to Plaintiffs for any and all damages resulting from their acts of conspiracy which have caused damage to

---

[69] 94-2203 (La. 1994); 652 So.2d 1306, 1309.
[70] *Id.* at 1313.
[71] *Id.*
[72] *Id.*
[73] Rec. Doc. 1-1.
[74] 652 So.2d at 1309.
37163

Plaintiffs and for any amounts by which Defendants have been unjustly enriched in connection therewith."[75] Defendants argue that "Plaintiffs' claim for civil conspiracy fails for lack of an underlying tort."[76] Plaintiffs counter:

> Clearly, after Rouses's was caught with the Izzo's recipe book, Rouse became extremely upset and determined to destroy Izzo's. Consequently, there was a conscious meeting wherein the Rouse family members spoke openly about how to retaliate against Izzo's and doing [*sic*] the most damage. Rouse's concluded that the perfect vindication would be to have third parties to do business with Izzo's, or its affiliates, in perpetuity.

The Louisiana Supreme Court in *Ross v. Conoco, Inc.*, held, "the actionable element in a claim [under the civil conspiracy statute] is not the conspiracy itself, but rather the tort which the conspirators agreed to perpetrate and which they actually commit in whole or in part."[77] Plaintiffs' *Complaint* is vague and conclusory and whether Defendants' actions were "acts of conspiracy" is a legal conclusion which the United States Supreme Court held in *Twombly*[78] cannot survive a 12(b)(6) motion to dismiss. Accordingly, Defendants' *Motion to Dismiss* Plaintiffs' claim for civil conspiracy – Count IV is GRANTED.

---

[75] Rec. Doc. 1-1.
[76] Rec. Doc. 5.
[77] 02-0299 (La. 2002); 828 So.2d 546, 553.
[78] *Twombly*, 550 U.S. at 556.
37163

### III.  CONCLUSION

For the reasons set forth above, Defendant's *Partial Motion to Dismiss Pursuant to FRCP 12(b)(6)*[79] is GRANTED IN PART AND DENIED IN PART.  Defendants' motion to dismiss the LUTPA claim is granted, and this claim is DISMISSED WITH PREJUDICE as prescribed.  Defendants' motion to dismiss Plaintiffs' claims of tortious interference with a business relationship, product defamation and/or disparagement, civil conversion, and conspiracy is granted, and these claims are DISMISSED WITHOUT PREJUDICE. Defendants' motion to dismiss Plaintiffs' Louisiana trademark claim is DENIED.

Furthermore, Defendants' *Motion for Oral Argument*[80] is DENIED as moot.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on February 2, 2017.

*/s/ Shelly D. Dick*
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[79] Rec. Doc. 53.
[80] Rec. Doc. 6.
37163