UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| K&F RESTAURANT HOLDINGS, LTD., d/b/a IZZO'S ILLEGAL BURRITO, ET AL. | CIVIL ACTION |
| VERSUS | NO. 16-293-JWD-EWD |
| DONALD J. ROUSE, JR., ET AL. | |

## RULING AND ORDER

On October 26, 2017, Plaintiffs K&F Restaurant Holdings, Ltd. d/b/a Izzo's Illegal Burrito ("Izzo's"); K&F Restaurant Operations, LLC; G&O Pizza Holdings, Ltd. d/b/a LIT Pizza; G&O Restaurant Operations, LLC; Osvaldo Fernandez; and A. Gary Kovacs (collectively "Plaintiffs") filed the operative Second Amended Complaint in this case. (Doc. 138). Plaintiffs allege, *inter alia*, that Defendant Donald J. Rouse, Jr. manages the Rouses chain of grocery stores and bribed an Izzo's employee to "defect" to Rouses and bring with him Izzo's secret recipes. (*Id.* at 3). Plaintiffs claim that Rouses now uses Izzo's recipes in its build-your-own burrito bars. (*Id.* at 4). Plaintiffs also contend that Donald J. Rouse, Jr.'s conduct in bribing an Izzo's employee, as well as his alleged subsequent interference with Izzo's ability to obtain space in commercial developments, violated several state and federal criminal statutes. (*Id.* at 4-6).

Defendants Donald J. Rouse, Jr., Donald J. Rouse, Sr., Thomas B. Rouse, Allison Rouse Royster, and Rouse's Enterprises, L.L.C. (collectively "the Rouse Defendants") move to strike the aforementioned allegations as false, scandalous, and prejudicial. ("Motion," Doc. 141). The Rouse Defendants contend that these allegations were first made in the Second Amended

Complaint, and this timing "calls into question Plaintiffs' motivation and basis for the amendment." (Doc. 141-1 at 2-3). The Rouse Defendants also note that, in November 2017, this lawsuit was the subject of news stories in the *Baton Rouge Business Report* and *The Hayride*, and, "[a]bsent the scandalous allegations[,] . . . it is doubtful that this action would have been considered interesting enough to gain the attention of any journalists." (*Id.* at 3).

The articles are attached as exhibits to the Motion. The *Baton Rouge Business Report* article states in relevant part:

> Izzo's Illegal Burrito and its parent company have upped the ante in their long-running lawsuit against the owners of Rouses Supermarkets.
>
> In court documents filed Oct. 27, the Baton Rouge-based restaurant chain alleges the south Louisiana supermarket chain committed conspiracy under the civil Racketeer Influenced and Corrupt Organizations, or RICO, Act.
>
> RICO cases are serious business, and have brought down mafia dons, corrupt government officials and Major League Baseball teams, and the RICO statute isn't typically used in disputes between two businesses. But in its recent court filing, Izzo's alleges Rouses engaged in the kind of corruption and racketeering that constitute a RICO action.
>
> Izzo's RICO argument, according to its lawsuit, is threefold:
>
> Rouses, in 2011, allegedly tried to bribe an Izzo's restaurant manager into going to work for Rouses so the supermarket could steal his Izzo's recipe book and establish burrito bars, similar to Izzo's, in their stores.
>
> Rouses conspired to keep Izzo's out of shopping center developments—specifically Juban Crossing—where Rouses was an anchor tenant. The suit claims Rouses' executives told leasing agents for Juban Crossing in phone calls that Izzo's "sold 'substandard' products and was 'litigious'" —allegedly, an act of wire fraud—in an effort to keep Izzo's out of the Denham Springs retail development.
>
> Rouses allegedly continues to use Izzo's trademark recipes at its own burrito bars.
>
> "As detailed above, Rouses conspired to commit three RICO violations against Izzo's," court documents claim. "These violations began in 2011 and are ongoing … Rouses Enterprises, LLC is a RICO enterprise affecting interstate commerce."

(Doc. 141-3 at 1 (alterations and quotations in original)).  The article on *The Hayride*, entitled "The Great Izzo's-Rouse's RICO Kerfuffle," characterizes this lawsuit and the events giving rise to it as "a rather crazy story of predatory marketing, cutthroat competition and two companies which downright do not like each other."  (Doc. 141-4 at 1-2).  The article quotes the first three paragraphs from the *Baton Rouge Business Report* article and then continues as follows (again, in relevant part):

> Izzo's is alleging essentially three things. First, that in 2011 Rouse's attempted to bribe an Izzo's store manager into taking a job with the supermarket chain and bringing along his recipe book so that Rouse's might replicate Izzo's product with burrito bars in its own stores. If you've been in a Whole Foods you've probably seen something along the lines of what that looks like.
>
> Second, Izzo's alleges that Rouse's has been acting to ban Izzo's from expanding into retail locations where Rouse's is an anchor tenant, most specifically in the Juban Crossing Shopping Center in Denham Spring. Izzo's says Rouse's people told Juban Crossing leasing agents that Izzo's burritos were "substandard" products and that the restaurant chain was "litigious" – which Izzo's says is wire fraud.
>
> There's a little bit of humor in that charge, of course. Without making any judgements about the truth of Izzo's claim it's a little amusing to see the old "Don't call us litigious; we'll sue you" argument being made.
>
> And the third allegation is that Rouse's is using Izzo's trademarked recipes, which may or may not be tough to prove. A burrito is a burrito, after all.

(*Id.* at 2-3).  Also attached in support of the Motion is a declaration by Donald J. Rouse, Jr., asserting that the challenged allegations are false.  (Doc. 141-2 at 1-2).

Plaintiffs oppose the Motion, arguing that motions to strike should be "used sparingly" and that it is improper to resolve a disputed question of fact via a motion to strike.  (Doc. 160 at 2).  Plaintiffs contend that all of their allegations were made in "good faith" and are based on "documentary evidence," "witness testimony," and "findings from a prior judicial proceeding."  (*Id.*).  They also maintain that the challenged allegations are necessary to state valid causes of

3

action and that the Rouse Defendants' arguments are better addressed via a motion to dismiss for failure to state a claim. (*Id.* at 3).

In reply, the Rouse Defendants argue that this case is "not about" recipes or burritos: rather, it is "about Plaintiffs' exclusion from certain shopping centers as a result of restrictive covenants[,]" as evidenced by Plaintiffs' prior filings. (Doc. 173 at 1). The Rouse Defendants also reiterate that Plaintiffs' allegations of bribery and theft are "entirely false" and scandalous, attracting the attention of the press and causing "great embarrassment and prejudice" to the Rouse Defendants. (*Id.* at 2).

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The decision to grant or deny a motion to strike lies within the sound discretion of the trial court. *Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835, 852 (E.D. La. 2011), *reconsideration granted in part on other grounds*, 2012 WL 1230736 (E.D. La. Apr. 12, 2012). However, motions to strike are disfavored and should be used "sparingly" because they are a "drastic remedy to be resorted to only when required for the purposes of justice." *Id.* A motion to strike should be granted only when the challenged allegations are "prejudicial to the defendant or immaterial to the lawsuit."[1] *Id.*

The Motion will be denied. With respect to immateriality, the Second Amended Complaint is now the operative pleading in this case. The Rouse Defendants may be correct that the factual allegations and legal theories undergirding this case have evolved while it has been pending. (*See*

---

[1] Some authorities suggest that a motion to strike should be granted only upon a showing that the challenged allegations are *both* prejudicial to the defendant and immaterial to the lawsuit. *See F.D.I.C. v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. 1993); *Glob. Adr, Inc. v. City of Hammond*, 2003 WL 21146696, at *1 (E.D. La. May 15, 2003) (citing *Niblo*); *see also* Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1382 (3d ed. 2018) (hereinafter "*Federal Practice and Procedure*") (noting "general judicial agreement" that motions to strike should be denied unless the challenged allegations have "no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action"). As discussed *infra*, the Rouse Defendants show neither prejudice nor immateriality, and the Motion therefore fails under either standard.

4

Doc. 141-1 at 2-3; Doc. 173 at 1-2). However, they have not directed the Court to any ruling forbidding Plaintiffs from raising new causes of action in the amended pleadings that they received leave to file. Whatever this case was "about" at its inception, it is now "about" the causes of action alleged in the Second Amended Complaint, and the challenged allegations are material to Plaintiffs' RICO claims as well as many of their state law causes of action.

With respect to prejudice, the Rouse Defendants direct the Court to articles in the *Baton Rouge Business Report* and *The Hayride*, arguing that Plaintiffs' allegations and the reporting on them have caused the Rouse Defendants "great embarrassment and prejudice." (Doc. 141-1 at 3; Doc. 173 at 2). Even if this case would not have attracted media attention absent the challenged allegations, the Court finds nothing particularly scandalizing, embarrassing, or prejudicial about the contents of the articles or what they suggest to readers. Although the *Baton Rouge Business Report* article observes that "RICO cases are serious business" that have "brought down mafia dons, corrupt government officials and Major League Baseball teams," it also notes that RICO is infrequently used in disputes between two businesses and repeatedly notes that the allegations in this case are merely allegations. (Doc. 141-3 at 1). Certainly, the Rouse Defendants' characterization of the article as "in effect, comparing members of the Rouse family to 'mafia dons,'" (Doc. 141-1 at 3), is far overstated.

The article in *The Hayride* is even less prejudicial to the Rouse Defendants. As noted *supra*, it describes this case and the events giving rise to it as a "kerfuffle" and a "crazy story," states that readers may have seen a similar build-your-own burrito bar in Whole Foods, describes Plaintiffs' position as "Don't call us litigious; we'll sue you," and suggests that Izzo's claims "may or may not be tough to prove" because "[a] burrito is a burrito, after all." (Doc. 141-4 at 2-3). The article's numerous disclaimers aside, its tone clearly suggests to readers that Plaintiffs' allegations

5

are baseless, overblown, and made in bad faith to such an extent that they are worthy of comment. Therefore, the Rouse Defendants' claims, even as supplemented and supported by the aforementioned articles, do not constitute a meaningful showing of prejudice.

A recurring underlying theme in the Motion is that the challenged allegations are simply false. The Rouse Defendants provide Donald J. Rouse, Jr.'s declaration in support of this argument, (*see generally* Doc. 141-2), and they also argue that the late addition of these allegations calls into question Plaintiffs' "motivation and basis for the amendment[,]" (Doc. 141-1 at 3).

However, as Plaintiffs correctly argue, disputed questions of fact cannot be decided on a motion to strike. *See, e.g., Abramson v. Fla. Gas Transmission Co.*, 908 F. Supp. 1383, 1386 (E.D. La. 1995). Relatedly, the standards for evaluating a complaint are well established and tend to favor the plaintiff: typically, the Court looks only to a very limited record (the complaint and attached exhibits), accepts well-pleaded facts as true, and reviews legal claims for "plausibility." *See Thompson v. City of Waco, Tex.,* 764 F.3d 500, 502-03 (5th Cir. 2014); *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 257 (5th Cir. 2009). A Rule 12(f) motion is not a vehicle for circumventing these standards and permitting the submission of evidence and pre-trial, pre-discovery resolution of disputed facts. *See Federal Practice and Procedure* § 1380 (a motion to strike is "neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint"). The Court also notes that the Rouse Defendants (and the other Defendants in this case) have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6), (*see* Docs. 139, 140, 143, 148), and any challenges to the sufficiency of Plaintiffs' allegations can be considered in connection with those motions upon the appropriate record and under the appropriate standards. The Rouse Defendants' arguments concerning the falsity of Plaintiffs' allegations are not properly considered in connection with the instant Motion.

Motions to strike are "disfavored" and to be used only "sparingly," and the Rouse Defendants have not shown that they are entitled to this "drastic remedy." *Frank*, 828 F. Supp. 2d at 852. The Motion, (Doc. 141), is therefore DENIED.

Signed in Baton Rouge, Louisiana, on <u>July 9, 2018</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**